UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| CHRISTOPHER BEY, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:13-cv-798 |
| ) | |
| v. ) | Honorable Robert Holmes Bell |
| ) | |
| THOMAS FINCO, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**O P I N I O N**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. This action arises out of events that took place during Plaintiff Christopher Bey's confinement in 2013 at the Bellamy Creek Correctional Facility (IBC). Defendants are Deputy Director of the Michigan Department of Corrections (MDOC) Thomas Finco and four MDOC employees at IBC: Resident Unit Manager (RUM) Robert Mote, Deputy Warden Matthew Macauley, Assistant Resident Unit Supervisor (ARUS) Gretchen Walters, and ARUS Laura Nevins.[1]

Plaintiff alleges that Defendants Walters, Finco, and Mote filed retaliatory misconduct charges against him in violation of his First Amendment rights. (Am. Compl. at 6-7, ECF No.

---

[1] Defendant Nevins has changed her last name to Normington. (*See* Def.'s Mot. at 1, ECF No. 31, PageID.186.) For the sake of clarity, she will be referred to by the last name Nevins throughout this memorandum opinion.

18, PageID.117-18.) He also alleges that Defendants Macauley, Mote, and Nevins retaliated against him in violation of his First Amendment rights and violated his Eighth Amendment rights under the Cruel and Unusual Punishments Clause by releasing him into IBC's general population in March 2013, and that four months later, Plaintiff was involved in a fight with another prisoner and Plaintiff was convicted of misconduct stemming from his involvement in that fight. (*Id.* at 7-9, PageID.118-20.) Plaintiff sues Defendants in their individual capacities and seeks an award of damages. (*Id.* at 2, 5-6, 9-10, PageID.113, 116-17, 120-21.)

The matter is before the Court on Defendants' Rule 12(b)(6) motion seeking dismissal of Plaintiff's claims on the basis of qualified immunity, along with Plaintiff's motions for partial summary judgment, for disqualification of the magistrate judge, and for an order on the pending dispositive motions. For the reasons set forth herein, Defendants' motion (ECF No. 31) will be granted and a judgment will be entered dismissing all of Plaintiff's claims with prejudice. Plaintiff's motions (ECF Nos. 42, 79, 81) will be denied.

**I. Standard**

Rule 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), and FED. R. CIV. P. 8(a)(2)). While this notice pleading standard does not require "detailed" factual

allegations, it does require more than labels and the bare assertion of legal conclusions. *See Twombly*, 550 U.S. at 555.

Generally, when considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept the plaintiff's factual allegations as true, and draw all reasonable factual inferences in the plaintiff's favor. *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009); *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). Courts are not required to conjure up unpleaded allegations, nor accept unwarranted factual inferences. *See Total Benefits Planning*, 552 F.3d at 434. "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570); *see Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012).

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even the lenient treatment generally given *pro se* pleadings has its

limits, however. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). "A plaintiff must 'plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678). "A plaintiff falls short if [] he pleads facts 'merely consistent with the defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct[.]'" *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79).

In deciding motions to dismiss under Rule 12(b)(6), the Court is generally limited to examination of the complaint alone. Nevertheless, the Court may also take into account exhibits to the complaint, Fed. R. Civ. P. 10(c), as well as documents referred to in the complaint but not attached, and matters of public record. *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008).

## II. Qualified Immunity

Defendants argue that they are entitled to dismissal of Plaintiff's claims against them on the basis of qualified immunity. "Once officials raise the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the officials are not entitled to qualified immunity.'" *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

"A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see*

*Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015); *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that each defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In *Brosseau v. Haugen*, 543 U.S. 194 (2004), the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198. Qualified immunity is an immunity from suit rather than a mere defense to liability. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014). The Supreme Court has emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201). "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'" *Lyons*

*v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 198-99); *see Perez v. Oakland County*, 466 F.3d 416, 428 (6th Cir. 2006) ("Because most legal rights are clearly established at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly violated.'"). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In its recent decision in *Plumhoff*, the Supreme Court reiterated that clearly established law is determined in the light of the particular circumstances faced by the individual defendant at the time he or she acted, not on the basis of a high level of generality:

> [A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate. In addition, we have repeatedly told courts not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.

134 S. Ct. at 2023 (citations and quotations omitted); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is 'whether the violative nature of the *particular* conduct is clearly established.'" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015).

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v.*

*Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Shreve v. Franklin County, Ohio*, 743 F.3d 126, 134 (6th Cir. 2014); *T. S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). The burden applies to each claim that the plaintiff is asserting against a defendant. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

### III. Plaintiff's Allegations

Plaintiff is in the custody of the MDOC. During the period at issue, January 31, 2013, through July 5, 2013, Plaintiff was an inmate at the Bellamy Creek Correctional Facility (IBC). MDOC Deputy Director Finco was employed in Lansing, Michigan. The four other defendants named in Plaintiff's Amended Complaint were employed by the MDOC at IBC: RUM Mote, Deputy Warden Macauley, ARUS Walters, and ARUS Nevins. (Am. Compl. at 2, 5-6, ECF No. 18, PageID.113, 116-17.)

On January 31, 2013, Plaintiff wrote a letter to ARUS Walters. Plaintiff contends that he complained about Ms. Walters's "attitude," and "racial segregation and discrimination among prisoners and staff[,] and that the officers and [Walters] were [somehow] demonstrating white supremacy in the unit[.]" (*Id.* at 2-3, 7, PageID.113-14, 118.) Plaintiff's letter to Ms. Walters is not attached as an exhibit to his pleading.

On February 11, 2013, ARUS Walters wrote a major misconduct ticket against Plaintiff for disobeying a direct order,[2] purportedly in "retaliation" for his letter. (*Id.* at 2-3, 7, PageID.113-14, 118.) On February 14, 2013, Plaintiff received a hearing on this charge.

---

[2]Under MDOC Policy Directive 03.03.105 ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts.

-7-

A hearing officer found Plaintiff guilty of the major misconduct charge, which was for disobeying a direct order by ARUS Walters demanding that Plaintiff surrender a bag containing contraband. The hearing officer summarized her reason for finding Plaintiff guilty as follows: "Hearing officer finds based on the allegations of the reporter Walters and this prisoner's own admission that Bey was told by the reporter to give the reporter the bag, that he heard this order as he replied verbally refusing saying he did not give a shit about such an order and he did not give Walters the bag when told. Bey is guilty of disobeying a direct order." (ECF No. 60-1, PageID.315-16.) The hearing officer sentenced Plaintiff to a 21-day period of detention, which ended on March 7, 2013.[3] (*Id.* at PageID.316.)

On February 12, 2013, one day after ARUS Walters had issued the misconduct ticket described in the preceding paragraph, Plaintiff filed a grievance against her. (Am. Compl. at 6, PageID.117.) Plaintiff alleges that his grievance against Ms. Walters was for unspecified "sexual harassment." (*Id.* at 6, PageID.117.) The grievance is not attached to his amended complaint.

In February 2013, Plaintiff received a protective housing quarterly review. ARUS Nevins noted as follows: "Prisoner Bey has 35+ points and is not adjusting well to his

---

[3]Plaintiff's amended complaint does not expressly mention that he was convicted of every misconduct which he alleges was "retaliatory." However, the amended complaint does refer to the misconduct charges and the sanctions subsequently imposed after conviction ("the results of the ticket," *see e.g.*, Am. Compl. at 2, 7 PageID.113, 118) (emphasis added). These references are central to Plaintiff's claims and are sufficient to permit the Court to consider the hearing officer's decisions finding Plaintiff guilty and imposing sanctions without converting Defendants' Rule 12(b)(6) motion into a motion for summary judgment. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011); *Booker v. GTE.net, LLC*, 350 F.3d 515, 519 (6th Cir. 2003). Similarly, Plaintiff's allegations about the form that he signed waiving protective custody (Am. Compl. at 2-3, 7-8, PageID.113-14, 118-19) are sufficient to permit the court to consider the underlying document within the context of a Rule 12(b)(6) motion.

specialized housing. He admits to writing ARUS Walters a derogatory letter and on 2-11-13 refused to be shaken down. Prisoner Bey agrees that returning to GP [general population] would be the best situation for him." (ECF No. 60-2, PageID.317.) Plaintiff indicated that he was "ready to return to GP at IBC." On February 13, 2013, Plaintiff signed the quarterly review form. (*Id.*) Plaintiff now alleges that Defendant Nevins indicated that he would be in "deep trouble" and/or would stay in administrative segregation if he refused to "sign off" on protective custody. (Am. Compl. at 2-3, 7-8, PageID.113-14, 118-19.)

IBC's Security Classification Committee determined that Plaintiff should be returned to the prison's general population: "Prisoner states he does not need specialized housing and is ready to return to GP." (ECF No. 60-2, PageID.317.) Deputy Warden Macauley was a member of the Security Classification Committee and he signed the quarterly review form. (*Id.*) Plaintiff alleges that in IBC's Unit 5 general population he was "surrounded by his known enemy prisoner (Porter #617840) and known (STG) violent prisoners[.]" (Am. Compl. at 8, PageID.119.)

On March 4, 2013, Defendant Mote issued a Class II misconduct ticket against Plaintiff for interference with administration of prison rules. The filing of this misconduct charge had been authorized in Lansing by Deputy Director Finco. Plaintiff was found guilty of this minor misconduct charge and the hearing officer imposed a sentence of 25 days of loss of privileges. (Am. Compl. at 2, PageID.113; ECF No. 45-1, PageID.269-70.) Plaintiff alleges that this minor misconduct ticket was issued in retaliation for the sexual harassment grievance that he wrote on February 12, 2013, against Ms. Walters. (*Id.* at PageID.113-14,

118-19.)

On March 7, 2013, Plaintiff was released from administrative segregation into IBC's Housing Unit 5.[4] Four months later, on July 5, 2013, Plaintiff was involved in a fight with another prisoner. Plaintiff sustained an injury to his lip and a major misconduct conviction stemming his involvement in this fight. (*Id.* at 3, 8-9, PageID.114, 119-20; ECF No. 45-1, PageID.271-73.)

### IV. Discussion

Plaintiff has the burden of identifying specific factual allegations made against each individual defendant and citing the legal authority that would show a violation of his clearly established rights by each Defendant on every claim asserted in this lawsuit. Plaintiff's one-half page response to Defendants' motion (ECF No. 44) fails to cite a single case, and it falls well short of satisfying his burden in response to Defendants' claim of entitlement to qualified immunity. *See LeFever*, 645 F. App'x at 442; *Shreve*, 743 F.3d at 134. Plaintiff did cite a few cases in the three-page brief that he filed in support of his motion for partial summary judgment (ECF No. 42) and those cases are considered herein. Upon review, the Court finds that Plaintiff has not demonstrated that any alleged action by any Defendant herein violated his clearly established First or Eighth Amendment rights.

---

[4]Plaintiff concedes that he was found guilty of the misconduct charge filed by Ms. Walters, and that on March 7, 2013, he was released from administrative segregation at IBC when the sanction expired. (Pl.'s Br. at 1, ECF No. 43.)

### A. First Amendment

Plaintiff alleges that all Defendants retaliated against him in violation of his First Amendment rights. Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394.

The filing of a prison grievance is generally constitutionally-protected conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). Frivolous grievances, however, are not constitutionally-protected conduct. *See Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). While a prisoner has a First Amendment right to file grievances against prison officials, if a prisoner violates a legitimate prison regulation, he is not engaged in protected conduct, and cannot proceed beyond step one. In other words, a prisoner cannot exercise his right to file grievances in a manner that violates legitimate prison regulations or penological objectives. *See Lockett*, 526 F.3d at 874; *Smith v. Campbell*, 250 F.3d at 1037; *see also Thaddeus-X*, 175 F.3d at 395. "Abusive or manipulative use of a grievance system [is] not . . . protected conduct," and prison officials may take action in response to the

prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal. *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012); *see also Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 864 (5th Cir. 2004) (to succeed on a First Amendment retaliation claim, a prisoner must establish that he exercised his rights "in a manner consistent with his status as a prisoner").

Plaintiff alleges that on February 12, 2013, he filed a "sexual harassment" grievance against ARUS Gretchen Walters. (*Id.* at PageID.117.) He does not specify what he stated in this grievance. Plaintiff was found guilty of interference with administration of prison rules because his statements were investigated and found to be unsupported. (ECF No. 45-1, PageID.270.) In *Thaddeus-X*, the Sixth Circuit observed that where a prisoner violates a legitimate prison regulation, "he is not engaged in 'protected conduct,' and cannot proceed beyond step one." 175 F.3d at 395; *see also Jones v. Heyns*, No. 1:12-cv-1341, 2014 WL 1607621, at * 2-3 (W.D. Mich. Apr. 22, 2014).

Plaintiff cites *Arnett v. Myers*, 281 F.3d 552 (6th Cir. 2002) (*see* Pl.'s Br. at 1, 3, ECF No. 42, PageID.261-63), but that decision could not clearly establish the right Plaintiff claims. *Arnett* did not involve any claim brought by a prisoner. First Amendment rights "are circumscribed in the prison setting," and a prisoner retains only "those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives." 175 F.3d at 390. Plaintiff has not alleged facts sufficient to indicate that the filing of this grievance was protected conduct (i.e. that it was not frivolous and not an abuse of the grievance process). Further, he falls well short of alleging facts establishing a violation

of his clearly established rights. The determination whether a particular right was clearly established must not be made at a high level of generality. *See City & County of San Francisco*, 135 S. Ct. at 1175-76. The Court finds that Defendants are entitled to dismissal of all of Plaintiff's retaliation claims related to this grievance, on the basis of qualified immunity.

Plaintiff's claims of retaliation stemming from the letter that he wrote to ARUS Walters in January 2013 fare no better. Plaintiff's bare assertion that his letter was protected conduct does not suffice. He has not carried his burden of identifying clearly established law that, as of January and February 2013, writing a letter to a member of the prison's custody staff was conduct protected by the First Amendment, much less alleged facts and cited legal authority sufficient to establish that his speech in this instance was protected.[5] A prisoner's speech is not protected by the First Amendment "if it is inconsistent with his status as a prisoner or the legitimate penological objectives of the prison system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see Griffin v. Berghuis*, 563 F. App'x 411, 415-19 (6th Cir. 2014).

Further, Plaintiff was found guilty of all the challenged misconduct charges. This essentially checkmates any claim that they were retaliatory or that they violated Plaintiff's First Amendment rights. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013); *Stradley v. Mich. Dep't of Corr.*, No. 1:15-cv-896, 2015 WL 6758826, at *4 (W.D. Mich.

---

[5]None of the cases cited by Plaintiff (*see* Pl.'s Br., ECF No. 42, PageID.261-63) involved correspondence to a prison official. They could not clearly establish Plaintiff's rights with regard to sending a letter to ARUS Walters.

Nov. 5, 2015); *Briggs v. Burke*, No. 1:13-cv-1160, 2015 WL 5714520, at *1 (W.D. Mich. Sept. 29, 2015); *Jones v. Heyns*, 2014 WL 1607621, at *2-3.

### B. Eighth Amendment

Plaintiff claims that Defendants Macauley, Mote, and Nevins violated his rights under the Eighth Amendment. He alleges that they were deliberately indifferent to the risk that he would be assaulted on July 5, 2013, by approving him for housing in the prison's general population in February 2013, and by releasing him into the prison's general population on March 7, 2013. Plaintiff alleges that these actions led to his involvement in a fight months later, which eventually resulted in a hearing officer's decision finding him guilty of the major misconduct charge for fighting.

Not every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828. "'To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.'" *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

The Eighth Amendment proscribes deliberate indifference by prison officials to an unreasonable risk of injury to prison inmates. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). An Eighth Amendment claim contains objective and subjective components. *Farmer*,

511 U.S. at 834, 837; *Cardinal v. Metrish*, 564 F.3d 794, 802 (6th Cir. 2009). First, "the deprivation alleged must be, objectively, 'sufficiently serious.' For a claim based on a failure to prevent harm, the inmate must show that he was incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *Woods*, 110 F.3d at 1223.

Plaintiff alleges that he was housed in IBC's Unit 5. Plaintiff was housed for four months in the same unit as alleged security threat group (STG) violent prisoners and prisoner Porter. (Am. Compl. at 3, ECF No. 18, PageID.114.) Plaintiff does not allege that he was involved in any altercation with inmate Porter. He has not alleged any facts indicating why unidentified security threat groups posed a particular risk to him. Plaintiff does not allege that he requested protective custody at any time during the period at issue, much less that any such request was refused by Defendants Macauley, Mote, or Nevins.

On July 15, 2013, Plaintiff was found guilty of a major misconduct charge for fighting. In reaching this decision, the hearing officer considered witness statements and the video recording of Plaintiff's altercation with another prisoner. (ECF No. 45-1, PageID.271-73.) Plaintiff now alleges that "several" unidentified prisoners attacked him. (Am. Compl. at 8, PageID.119.) Plaintiff has not alleged facts sufficient to support the objective component of Eighth Amendment claim.

The second requirement for a claim of deliberate indifference to the risk of assault by a fellow inmate is that the prison official have a sufficiently culpable state of mind. In *Farmer*, the Supreme Court held that the subjective element of a claim of deliberate indifference requires a state of mind akin to criminal recklessness. 511 U.S. at 839-40. "[A]

prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows and disregards and excessive risk to inmate health or safety; the official must be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Id.* at 837. "This burden is not light; even 'an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as punishment.'" *Shade v. City of Middletown*, 200 F. App'x 566, 569 (6th Cir. 2006) (quoting *Farmer* 511 U.S. at 838); *see Perez v. Oakland County*, 466 F.3d 416, 424 (6th Cir. 2006).

Plaintiff has not alleged facts sufficient to support an inference that Defendants Macauley, Mote, or Nevins were aware of a substantial risk of serious harm. Plaintiff made no factual allegations in his amended complaint that he was unusually vulnerable. There are also no allegations that he sought protective custody from Defendants or from anyone else in the months following his release from administrative segregation. Plaintiff's eventual receipt of a misconduct citation for fighting on July 5, 2013, and his subsequent misconduct conviction indicates that Plaintiff was involved in a fight, not that there was a risk that he would be assaulted by other inmates. Thus, Plaintiff has not alleged facts sufficient to support the subjective component of an Eighth Amendment claim against Defendants.

Plaintiff has not carried his burden on the second prong of the qualified immunity analysis. The two cases that he cites, *Leary v. Livingston County*, 528 F.3d 438 (6th Cir. 2008) and *Street v. Corr. Corp. of Am.*, 102 F.3d 810 (6th Cir. 1996) (*see* Pl.'s Br. at 2, ECF

No. 42, PageID.262), did not clearly establish Plaintiff's constitutional rights in the particularized facts at issue. *Leary* involved a pretrial detainee, who had been arrested on a Friday based on charges of criminal sexual conduct against a nine-year-old girl. Leary had been told to keep his mouth shut about the charges. The officer who was alleged to have been deliberately indifferent to the risk that Leary would be assaulted mentioned to Leary "'that once the other inmates found out about what he did that there would be no protection from anyone here at the jail,' and then proceeded to tell the other inmates that Leary 'was in for raping a nine year old girl[.]'" *Id.* at 441. The officer knew that Leary needed protection, but took no steps in that regard. *Id.* at 442. "The inmates began harassing Leary about the child-rape charges on Sunday morning and beat him severely that evening. An ambulance took him to the hospital, where he was treated for facial fractures and a skull fracture." *Id.* at 441.

By contrast, the alleged actions of Defendants Macauley, Mote, and Nevins are not remotely analogous to the outrageous actions of the officer in *Leary*, and Plaintiff's pleading does not allege facts establishing that he faced any apparent and immediate threat like that faced by detainee Leary.

If anything, the Sixth Circuit's decision in *Street* reinforces the strength of Defendants' claim of entitlement to qualified immunity. Prisoner Street had argued at some length with prisoner Harris, and Harris shortly thereafter asked Corrections Officer Stephen (who had knowledge of the argument) what would happen if he "kicked Street's ass" or "knock[ed] Street out." 102 F.3d at 812. Harris was "assaultive and aggressive," and he was recognized as a "severe facility security problem" and "a threat to the safety of inmates." *Id.*

-17-

at 814. On the same day as the argument and Harris's questions about the possible consequences of attacking Street, Officer Stephen simultaneously opened all the doors of the housing unit, which allowed prisoner Harris to attack Street with a sock with at least one metal lock in it. *Id.* at 813. The "[c]harges of fighting against Street arising from this incident were dismissed." *Id*. Harris was charged with criminal assault. *Id*.

Unlike this case, *Street* involved an immediate and substantial risk of serious harm. The Supreme Court has repeatedly emphasized that in order to be clearly established, the question must be "beyond debate" at the time the defendant acted. *Lane v. Franks*, 134 S. Ct. 2383. "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate." *City & Cnty. of San Francisco*, 135 S. Ct. at 1774 (citations and quotations omitted).

In summary, Plaintiff has not carried his burden of demonstrating that the alleged actions of each Defendant violated his clearly established constitutional rights. *See Mullenix*, 136 S. Ct. at 308; *Plumhoff*, 134 S. Ct. at 2023; *LeFever,* 645 F. App'x at 442.

## V. Other Motions

### A. Plaintiff's Motion for Partial Summary Judgment

Because the Court will granting Defendants' motion to dismiss on the basis of qualified immunity, Plaintiff's motion for partial summary judgment will be denied as moot.

### B. Motion for Disqualification

Plaintiff also seeks disqualification of the magistrate judge under 28 U.S.C. § 455(b)(1). Section 455(b)(1) provides for disqualification where a justice, judge, or magistrate judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning a proceeding." 28 U.S.C. § 455(b)(1). The Court finds no factual or legal basis for granting the relief requested. The delays that have occurred in this matter are regrettable, but they stem from the volume of motions filed in prisoner civil rights cases, not from any basis for disqualification under section 455(b). Consequently, Plaintiff's motion to disqualify (ECF No. 81) will be denied.

### C. Motion for an Order

Plaintiff has filed a motion for an order requiring the district judge or magistrate judge to enter a decision on the dispositive motions. (ECF No. 79.) Because the Court will be entering a decision on the dispositive motions, this motion will be denied as moot.

### VI. Conclusion

For the foregoing reasons, Defendants' motion (ECF No. 31) will be granted and a judgment will be entered dismissing all of Plaintiff's claims against Defendants with prejudice because the claims are barred by qualified immunity. Plaintiff's motions for partial summary judgment, for disqualification of the magistrate judge, and for an order on the dispositive motions (ECF Nos. 42, 79, 81) will be denied.

An order and judgment will be entered that are consistent with this Opinion.

Dated: September 8, 2016                    /s/ Robert Holmes Bell
                                            ROBERT HOLMES BELL
                                            UNITED STATES DISTRICT JUDGE